UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TIMOTHY R. SHELLEY,<br>    *Plaintiff*,<br><br>    *vs.*<br><br>CAROLYN W. COLVIN, *Acting Commissioner*<br>*of Social Security Administration*,<br>    *Defendant*. | )<br>)<br>)<br>)    1:13-cv-01239-JMS-MJD<br>)<br>)<br>)<br>) |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Timothy Shelley applied for a period of disability, disability insurance benefits, and supplemental security income from the Social Security Administration ("SSA") on May 8, 2010. After a series of administrative proceedings and appeals, including a hearing in December 2011 before Administrative Law Judge ("ALJ") Mark Ziercher, the ALJ determined that Mr. Shelley was not entitled to benefits. In June 2013, the Appeals Council denied Mr. Shelley's request for a review of the ALJ's decision, rendering that decision the final decision of the Defendant, Commissioner of the Social Security Administration ("the Commissioner"), for the purposes of judicial review. *See* 20 C.F.R. § 404.981. Mr. Shelley then filed this action under 42 U.S.C. § 405(g), requesting that the Court review the Commissioner's denial.

## I.
### STANDARD OF REVIEW

The Court's role in this action is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to

determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court *must* affirm the denial of benefits. Otherwise the Court will remand the matter back to the SSA for further consideration; only in rare cases can the Court actually order an award of benefits. *See Briscoe v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

To evaluate a disability claim, an ALJ must use the following five-step inquiry:

> (1) [is] the claimant…currently employed, (2) [does] the claimant ha[ve] a severe impairment, (3) [is] the claimant's impairment…one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment,…can [he] perform h[is] past relevant work, and (5) is the claimant…capable of performing any work in the national economy[?]

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted). After Step Three, but before Step Four, the ALJ must determine a claimant's RFC, which represents the claimant's physical and mental abilities considering all of the claimant's impairments. The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e).

## II.
### BACKGROUND

Mr. Shelley contends he is disabled due to a variety of impairments, which will be discussed as necessary below. He alleges a disability onset date of September 15, 2008. [Filing No. 16-5, at ECF p. 2.]

Using the five-step sequential evaluation set forth by the SSA, the ALJ issued an opinion on July 6, 2011. [Filing No. 16-2, at ECF p. 20-32.] The ALJ found as follows:

- At Step One, the ALJ found that Mr. Shelley did not engage in substantial gainful activity[1] since the alleged onset date of his disability, September 15, 2008. [Filing No. 16-2, at ECF p. 22.]

- At Step Two, the ALJ found that Mr. Shelley suffered from the following severe impairments: degenerative disk disease, degenerative joint disease of the right shoulder, and a right rotator cuff tear. The ALJ, however, concluded that Mr. Shelley has been diagnosed with or treated for several impairments that were not severe: gout, chronic obstructive pulmonary disease, essential hypertension, and pancreatitis. [Filing No. 16-2, at ECF p. 23.]

- At Step Three, the ALJ first concluded that Mr. Shelley's degenerative disc disease did not meet or medically equal Listing 1.04, and his right shoulder impairments did not meet or medically equal Listing 1.02B. [Filing No. 16-2, at ECF p. 24.] The ALJ concluded that Mr. Shelley had the residual functional capacity ("RFC") to perform light work.[2] [Filing No. 16-2, at ECF p. 25-29.] Further, the ALJ concluded that Mr. Shelley is able to stand and/or walk for up to six hours in an eight-hour workday, can never reach overhead bilaterally and can frequently reach in all other directions with his dominant arm, can frequently perform neck flexion and rotation but never neck extension, and can perform productive work tasks for up to an average of 96% to 100% of an eight-hour work day, not including the typical breaks. [Filing No. 16-2, at ECF p. 25.]

- At Step Four, the ALJ found that Mr. Shelley is unable to perform any of his past relevant work, which included work as a forklift driver and a groundskeeper. [Filing No. 16-2, at ECF p. 29-30.]

- At Step Five, the ALJ found that Mr. Shelley could perform other jobs existing in the national economy such as a cashier, cafeteria attendant, or office machine operator. [Filing No. 16-2, at ECF p. 30-31.]

Based on these findings, the ALJ concluded that Mr. Shelley was not disabled and thus not entitled to benefits. [Filing No. 16-2, at ECF p. 31-32.] Mr. Shelley sought review of the

---

[1] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a) and § 416.972(a).

[2] Light work is defined as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

ALJ's decision from the Appeals Council, but the Appeals Council denied his request for review on June 21, 2013. [Filing No. 16-2, at ECF p. 2-5.] Mr. Shelley's appeal from that decision is now before this Court.

### III.
#### DISCUSSION

Mr. Shelley challenges the ALJ's decision on two bases: (1) the ALJ erred at Step Three by not consulting a medical expert before concluding that Mr. Shelley's degenerative disc disease did not medically equal Listing 1.04A; and (2) the ALJ erred at Step Three by assessing Mr. Shelley an RFC that was not supported by substantial evidence. [Filing No. 20, at ECF p. 16-30.] The Court will address each argument in turn.

### A. The ALJ erred by not consulting a medical expert before concluding that Mr. Shelley's degenerative disc disease did not medically equal Listing 1.04A.

Mr. Shelley contends that the ALJ erred by failing to consult a medical expert before concluding that his degenerative disc disease did not meet or equal Listing 1.04. [Filing No. 20, at ECF p. 16.] According to Ms. Shelley, both Seventh Circuit precedent and social security regulations require an ALJ to consider a medical expert opinion on whether a claimant's impairments are equivalent to a Listing, and the "record in this case simply does not contain an expert opinion addressing whether the claimant's combined impairments equal the intent of Listing 1.04A." [Filing No. 20, at ECF p. 18-19.]

The Commissioner recognizes the authority Mr. Shelley cites, but argues that the ultimate "responsibility for making this decision rested with the ALJ." [Filing No. 25, at ECF p. 5.] Moreover, says the Commissioner, the medical evidence regarding Mr. Shelley's degenerative disc disease on which the ALJ relied shows that "[t]he ALJ properly found that [Mr. Shelley] neither met nor equaled the Listing 1.04." [Filing No. 25, at ECF p. 6.]

Mr. Shelley replies that, "[a]lthough the final determination on equivalence is reserved to the Commissioner and her adjudicators, those adjudicators must obtain a medical consultant's opinion on equivalence before reaching an unfavorable determination," and that consultation did not occur in this case. [Filing No. 30, at ECF p. 2.]

Listing 1.04 addresses "[d]isorders of the spine." 20 C.F.R., Pt. 404, Subpt. P, App. 1, Listing 1.04. This listing requires a claimant to demonstrate that he has a disorder of the spine (which explicitly includes degenerative disc disease), resulting in compromise of a nerve root or the spinal cord, and, as relevant here:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R., Pt. 404, Subpt. P, App. 1, Listing 1.04.

"Under a theory of presumptive liability, a claimant is eligible for benefits if he has a condition that meets or equals an impairment found in the Listing of Impairments. Each listing has a set of criteria which must be met for an impairment to be deemed conclusively disabling." *Kastner v. Astrue*, 697 F.3d 642, 646-47 (7th Cir. 2012) (citations omitted). "Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue." *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004); *see* 20 C.F.R. § 404.1526(c) ("When we determine if your impairment medically equals a listing, we consider . . . the opinion given by one or more medical . . . consultants designated by the Commissioner."); SSR 96-6p, 1996 WL 374180, *3 ("[L]ongstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evi-

- 5 -

dence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight.").

The ALJ in this case failed to obtain or consider a medical expert's opinion on whether Mr. Shelley met or medically equaled the criteria of Listing 1.04. Instead, the ALJ performed his own assessment of the medical evidence. The ALJ began his analysis by recognizing that Mr. Shelley had undergone cervical foraminotomy on October 14, 2009. [Filing No. 16-2, at ECF p. 24 (citing Filing No. 16-8, at ECF p. 60).] The ALJ then noted that, following that procedure, physical examination revealed "some decreased range of motion of the cervical spine with flexion and extension, atrophy of the right biceps and trapezius with weakness in the musculature of the right upper extremity. The claimant reported at that time he was independent with activities of daily living, but was limited to lifting seven pounds and that he had difficulty writing with his right hand." [Filing No. 16-2, at ECF p. 24 (citing Filing No. 16-8, at ECF p. 85).] But the ALJ subsequently noted that following physical therapy, "the claimant had a grip strength of 25 pounds and key pinch strength of eight pounds in the right hand," and that the "most recent notes from the claimant's treating source . . . do not list cervical disc disease as an active medical problem." [Filing No. 16-2, at ECF p. 24 (citing Filing No. 16-11, at ECF p. 13-14; Filing No. 16-13, at ECF p. 17; Filing No. 16-13, at ECF p. 71; Filing No. 16-14, at ECF p. 38).] The ALJ thus concluded that, because there is no evidence "of root compression since the October 2009 surgery" or "of arachnoiditis or spinal stenosis in the lumbar spine," Mr. Shelley did not meet Listing 1.04's criteria. [Filing No. 16-2, at ECF p. 24.]

The problem with the ALJ's analysis is that while this discussion may have addressed whether Mr. Shelley *met* the listing, none of the evidence on which the ALJ relied was an assessment by a medical expert as to whether Mr. Shelley's condition *equaled* the listing, as is re-

quired. *See Barnett, 381 F.3d at 670*; SSR 96-6p, at *3. Nor did the ALJ consider a state agency medical consultant's "SSA-831-U5, SSA-832-U5, or SSA-833-U5 form that would otherwise satisfy the ALJ's duty to consider an expert's opinion on medical equivalence." *Barnett, 381 F.3d at 671*; *see* SSR 96-6P, at *3. This is because both state agency medical consultants were unable to make an equivalence determination for Mr. Shelley due to "insufficient evidence."[3] [Filing No. 16-8, at ECF p. 318; Filing No. 16-11, at ECF p. 8-9.]

To be sure, the Commissioner is correct that the ultimate equivalence determination rests with the ALJ. *See* 20 C.F.R. § 404.1526(e) ("For cases at the administrative law judge or Appeals Council level, the responsibility for deciding medical equivalence rests with the administrative law judge or Appeals Council."). But the fact that the ALJ has the final say, does not mean that he can reach his decision without "consider[ing] an expert's opinion on the issue." *Barnett, 381 F.3d at 670*; *see also* 20 C.F.R. § 404.1526(c) ("[The ALJ will] also consider the opinion given by one or more medical or psychological consultants designated by the Commissioner" when deciding whether a claimant's impairments "medically equals a listing.")

The ALJ's failure to consider a medical expert's opinion on equivalence alone requires the Court to vacate the ALJ's decision and remand for further proceedings. *See Barnett, 381 F.3d at 671*; *see also Wadsworth v. Astrue*, 2008 WL 2857326, *7 (S.D. Ind. 2008) (vacating and remanding because the ALJ did "not seek[] the opinion of a medical advisor as to whether [the claimant's] impairments equaled a listing" or consider a medical expert's "disability determination form that addresses whether the alleged impairment equals a listing" as required by SSR 96-6p).

---

[3] The Court notes that the state agency consultants noted that there was insufficient evidence because Mr. Shelley failed to attend his consultative exams. [Filing No. 16-8, at ECF p. 318; Filing No. 16-11, at ECF p. 8-9.] The Commissioner does not argue, however, that this affects the ALJ's duty to consult a medical expert before determining equivalence.

### B. The RFC the ALJ assessed to Mr. Shelley at Step Three is not supported by substantial evidence

Although the Court has already determined that it must vacate the ALJ's decision and remand the case for further proceedings, the Court will briefly address Mr. Shelley's second issue on appeal. Mr. Shelley contends that the RFC assessed to him by the ALJ is not supported by substantial evidence for three reasons: (1) the ALJ improperly discounted his allegations of difficulty lifting, grasping, and feeling with his right hand; (2) the ALJ ignored evidence regarding Mr. Shelley's exertional limitations and "failed to consider and discuss the impact of all of the claimant's physical impairments on his ability to sustain work"; and (3) the ALJ "erroneously evaluated the claimant's recurring gout flare-ups." [Filing No. 20, at ECF p. 20-30.] The Commissioner disagrees with each contention, and the Court will address them in turn.

"We will uphold the ALJ's decision if it is supported by substantial evidence, that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Although we will not reweigh the evidence or substitute our own judgment for that of the ALJ, we will examine the ALJ's decision to determine whether it reflects a logical bridge from the evidence to the conclusions sufficient to allow [the] reviewing court[] to assess the validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014); *see Thomas v. Colvin*, --- F.3d ----, 2014 WL 929150, \*2 (7th Cir. 2014) (stating that an ALJ's decision will be upheld "so long as it is supported by substantial evidence and the ALJ built an accurate and logical bridge between the evidence and her conclusion") (citation and quotation marks omitted).

The ALJ concluded that Mr. Shelley had a RFC to perform light work. [Filing No. 16-2, at ECF p. 25-29.] Further, the ALJ concluded that Mr. Shelley is able to stand and/or walk for up to six hours in an eight-hour workday, can never reach overhead bilaterally and can frequently

reach in all other directions with his dominant arm, can frequently perform neck flexion and rotation but never neck extension, and can perform productive work tasks for up to an average of 96% to 100% of an eight-hour work day, not including the typical breaks. [Filing No. 16-2, at ECF p. 25.] In reaching this conclusion, the ALJ focused on the following objective medical evidence. He began with Mr. Shelley's medical history, specifically focusing on his neck impairment. [Filing No. 16-2, at ECF p. 26.] The ALJ noted that Mr. Shelley was diagnosed with radiculopathies, and thus underwent laminectomies in October 2009, which restricted his ability to lift weight or bend or twist the neck. [Filing No. 16-2, at ECF p. 26.] After physical therapy, Mr. Shelley's grip strength and pain levels improved. [Filing No. 16-2, at ECF p. 26-27.] In March 2010, however, Mr. Shelley continued to complain of "incisional pain and sharp pain that radiated into the right trapezius, lateral aspect of the upper arm, and into the posterior forearm," he had a seven-pound lifting limitation, and he had difficulty writing with his right hand "due to hand weakness." [Filing No. 16-2, at ECF p. 27.] He had general weakness in his right arm and wrist, and "[t]he physician advised the claimant that it was unlikely that he would achieve normal strength in the right arm and he referred him back to neurosurgery." [Filing No. 16-2, at ECF p. 27.] In April 2010, the neurosurgeon "reported normal and symmetric muscle bulk and muscle tone in all limbs" and that "the right arm had improved." [Filing No. 16-2, at ECF p. 27.] Finally, the ALJ noted that subsequent medical assessments in 2011 did not note any neck or shoulder pain. [Filing No. 16-2, at ECF p. 27.]

After discussing Mr. Shelley's medical records, the ALJ turned next to Mr. Shelley's testimony at the December 2011 hearing. At the hearing, Mr. Shelley testified that, among other things, his impairments still prevent him from doing "anything strenuous because of [his] ability to grasp," that he still cannot write his name legibly, that he has "nowhere near" the lifting ability

he "had before," and that he "can't really grasp anything" with his right hand. [Filing No. 16-2, at ECF p. 49; Filing No. 16-2, at ECF p. 54.] The ALJ summarized Mr. Shelley's testimony, in pertinent part, as follows:

> [T]he claimant testified that his worst problems were his limited ability to grasp objects with his right hand and limited lifting ability. . . . Due to arm weakness, he has a tendency to drop things. . . . He is responsible for taking care of a two-year-old one to three days a week. At those times, he does need to change the child's diapers. He is able to lift the child, but this causes some pain. He tries to limit lifting twenty pounds since that was the advice of the neurosurgeon . . . . While on pain medication, he rated his pain as 3 on a scale of 0 to 10.

[Filing No. 16-2, at ECF p. 28.]

Following the ALJ's assessment of the medical evidence and Mr. Shelley's testimony, the ALJ concluded, in pertinent part, as follows:

> [T]he undersigned finds that the claimant is partially credible. Although the claimant has described activities that are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant's functioning to be severely limited. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Second, even if the claimant's daily activities are as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the medical evidence and other factors discussed in this decision. . . .
>
> While the claimant's medically determinable impairments could reasonably be expected to cause in general the alleged symptoms and limitations, the extent of those limitations are not supported by medically acceptable clinical and diagnostic techniques. Neither are the symptoms and limitations described by the claimant supported by the medical evidence[, as] there is insufficient objective medical evidence that the impairments are of such severity that they can reasonably be expected to give rise to the alleged limitations. Although a claimant's subjective symptoms may not be simply ignored, discrepancies with the record may be viewed as probative of exaggeration.
>
> . . . The third party statement of the claimant's spouse is partially credible for the same reasons stated in the above paragraph.

[Filing No. 16-2, at ECF p. 28.] Based on this reasoning, the ALJ assessed Mr. Shelley the RFC set forth above.

The Court agrees with Mr. Shelley that the ALJ's RFC assessment was deficient.  First, Mr. Shelley is correct that the two reasons the ALJ gave for discounting Mr. Shelley's testimony are inadequate.  The first reason—that "allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty," [Filing No. 16-2, at ECF p. 28]—ignores that Mr. Shelley's wife provided detailed evidence regarding Mr. Shelley's daily activities and how his medical difficulties affect his ability to perform them, [*see* Filing No. 16-6, at ECF p. 62-68].  In an almost identical case, where the ALJ discredited the claimant's testimony using the exact same language as the ALJ used here, the Seventh Circuit described the ALJ's justification as "nonsensical" given that there was corroborating evidence in the record.  *Thomas v. Colvin*, 534 Fed. Appx. 546, 551 (7th Cir. 2013) (describing the ALJ's same justification as that in this case as "nonsensical" given that it "ignores the fact that [the claimant's] daughter . . . confirmed the type and extent of [the claimant's] daily activities").  The Commissioner contends that *Thomas* is inapposite because "[t]here is no such [corroborating] evidence in this case."  [Filing No. 25, at ECF p. 8.]  This assertion is inexplicable given that such evidence does exist, [Filing No. 16-6, at ECF p. 62-68], and troubling given that Mr. Shelley cited it in his opening brief, yet the Commissioner simply ignores it.  In any event, Mr. Shelley's wife's corroborating testimony makes this case nearly identical to *Thomas* and undermines the ALJ's first reason for discounting Mr. Shelley's testimony.

As to the ALJ's second reason—that "it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the medical evidence and other factors discussed in this decision," [Filing No. 16-2, at ECF p. 28]—such a generalized reference to "the medical evidence and other factors" as a basis to discount Mr. Shelley's testimony does not build the requisite "logical bridge from the evidence to the conclusions sufficient

to allow [the] reviewing court[] to assess the validity of the [ALJ]'s [conclusion]." *Moore*, 743 F.3d at 1121. Without identifying the particular medical evidence or "other factors" that undermine Mr. Shelley's testimony, the Court has no way to adequately review the ALJ's decision. Accordingly, because both of the reasons the ALJ provided to discount Mr. Shelley's testimony are inadequate, the Court must vacate the ALJ's decision on this basis as well.

Mr. Shelley next contends that the ALJ also erred by impermissibly "dismiss[ing] [his] allegations solely because they were disproportionate to the objective medical evidence." [Filing No. 20, at ECF p. 24.] This is evident, says Mr. Shelley, from the ALJ's statement that "there is insufficient objective medical evidence that the impairments are of such severity that they can reasonably be expected to give rise to the alleged limitations." [Filing No. 16-2, at ECF p. 28.] The Commissioner contends that the ALJ's conclusion was adequate given the medical evidence in the record. [*See* Filing No. 25, at ECF p. 8 (detailing the medical evidence on which the ALJ relied).]

The Commissioner's argument is a non-starter, as it is well-established that that "the ALJ cannot reject a claimant's testimony about limitations on [his] daily activities solely by stating that such testimony is unsupported by the medical evidence." *Moore*, 743 F.3d at 1125 (citations and quotation marks omitted); *see* SSR 96-7p, 1996 WL 374186, *1 ("An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence."); *see also Bjornson v. Astrue*, 671 F.3d 640, 646 (7th Cir. 2012); *Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009); *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004).

Given that the ALJ's first two reasons for discounting Mr. Shelley's subjective statements regarding his impairments are inadequate, all that is left is the ALJ's statement that "there is insufficient objective medical evidence that the impairments are of such severity that they can reasonably be expected to give rise to the alleged limitations."[4] [Filing No. 16-2, at ECF p. 28.] Mr. Shelley's testimony cannot be discounted solely on these grounds. *See, e.g.*, *Moore*, 743 F.3d at 1125. Accordingly, the ALJ erred on this basis as well.

In sum, the ALJ's assessment of Mr. Shelley's RFC is a long recitation of the objective medical evidence followed by general boilerplate-type language explaining why Mr. Shelley's testimony is only "partially credible." [*See* Filing No. 16-2, at ECF p. 25-29.] It is deficient both in that it lacks a "logical bridge from the evidence to the conclusions," *Moore*, 743 F.3d at 1121, and that it discounts Mr. Shelley's testimony "solely by stating that such testimony is unsupported by the medical evidence," *id.* at 1125 (citations and quotation marks omitted). On remand, the ALJ must build a logical bridge from the evidence to his conclusions with reasoning relating specifically to this case, rather than relying on generalized, boilerplate language that could apply to any claimant.[5]

---

[4] The Court notes that the ALJ also stated that, "[a]lthough a claimant's subjective symptoms may not be simply ignored, discrepancies with the record may be viewed as probative of exaggeration," but never set forth what discrepancies existed or explained why any such discrepancies were probative of exaggeration. [Filing No. 16-2, at ECF p. 28.]

[5] Mr. Shelley also criticizes the ALJ for ignoring the medical evidence showing that he suffered from carpel tunnel syndrome, lower extremity edema, and anemia, and, furthermore, erroneously concluded that Mr. Shelley has had only one gout flare-up since October 2009. [Filing No. 20, at ECF p. 26-30.] On remand, the Court reminds the ALJ that, "[a]lthough [he is] not required to address in writing every piece of evidence or testimony presented," he must consider all medical evidence in the record, *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013); *see also* 20 C.F.R. § 404.1520(a)(3), including Mr. Shelley's evidence regarding his carpel tunnel syndrome, lower extremity edema, anemia, and gout flare-ups.

## IV.
### CONCLUSION

For the reasons stated herein, the ALJ's denial of relief is **REVERSED** and the case is **REMANDED** for further proceedings consistent with this opinion. Judgment shall issue accordingly.

**Distribution via ECF only to all counsel of record**